## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE COLOMBIAN SPOT, LLC and KITTY JOHNSON, individually and on behalf of all others similarly situated, | Civil Action No. 2:21-cv-01171-CB |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| DOLLAR BANK, a Federal Savings Bank | |
| Defendant. | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs, The Colombian Spot LLC and Kitty Johnson ("Plaintiffs"), individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to itself, on the investigation of their counsel, and on information and belief as to all other matters:

### INTRODUCTION

1.      All allegations herein are based upon information and belief except those allegations which pertain to Plaintiffs or their counsel. Allegations pertaining to Plaintiffs, or their counsel are based upon, inter alia, Plaintiffs' or their counsel's personal knowledge, as well as Plaintiffs' or their counsel's own investigation. Furthermore, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for additional investigation or discovery.

2.      The Pew Charitable Trusts has emphasized the importance of transparent checking account fee disclosures for both comparison shopping for checking accounts and for effective fee avoidance:

Bank accounts are an essential financial product, used by 9 in 10 American households, and need to be safe and transparent. Account agreements and fee schedules provide customers with account costs, terms, and conditions. Among the largest U.S. banks, however, the median length of checking account disclosure documents is 40 pages, and the information is presented in varied formats with inconsistent wording, making it difficult for consumers to easily find the information they need to comparison shop, avoid overdraft and other fees, and manage their money.

The Pew Trusts, "The Benefits of Uniform Checking Account Disclosures."

4.     The customers of Defendant, Dollar Bank ("Dollar Bank"), have been injured by Dollar Bank's improper practices to the tune of millions of dollars bilked from their accounts in clear violation of their agreements with Dollar Bank.

5.     On behalf of themselves and the Classes (defined below), Plaintiffs seek monetary damages, restitution and declaratory relief.

6.     Dollar Bank wrongfully charged Plaintiffs and the class members fees related to their checking accounts due to Dollar Bank's policy and practice of maximizing the account fees it imposes on customers. Although the conduct takes several forms, it has the overwhelming common denominator of breaching its customers' contracts and violating laws to maximize Dollar Bank's fee income at the expense of its customers. For example, Dollar Bank unlawfully assesses two or more fees ("Multiple Fees"), including overdraft fees ("OD Fees") and non-sufficient funds fees ("NSF Fees"), on a single Automated Clearing House ("ACH") transaction debit or check. In Dollar Bank's sole and undisclosed view, each time Dollar Bank processes an ACH transaction or check for payment after having been rejected for insufficient funds, it treats it as if it becomes a new, unique item or transaction that is subject to another fee, even though it is actually the same item. As another example, Dollar Bank uses a lesser balance than the money in the account to determine when to assess an overdraft fee.  As another example, Dollar Bank sets aside money for a particular debit card transaction, and although that money is then not counted by Dollar Bank

towards other transactions, it nonetheless can result in overdraft fees.  As yet another example, Dollar Bank will reject an item for which there supposedly was not enough money to cover a transaction, charge an NSF Fee for the rejected item, and although the transaction was rejected, nonetheless pretends the money in the account has been reduced by the amount of the transaction until the next day, when it is then credited to the account.  As yet another example, and as described in more detail below, Dollar Bank failed to comply with Regulation E before being allowed to charge any overdraft fees at all on certain transactions.  These are all just examples of the core practice being challenged by this lawsuit, that being the charging of improper fees by Dollar Bank of its customers in a manner not contracted for by its contracts with the customers.

7.      These practices breach contract promises made in Dollar Bank's adhesion contracts, breach the implied covenant of good faith and fair dealing in those contracts, and violate Pennsylvania consumer protection laws.

## JURISDICTION

8.      This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of the putative class exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of a proposed class that is comprised of over one hundred members, and because at least one of the members of the proposed class is a citizen of a different state than Dollar Bank.

## PARTIES

9.      Plaintiff The Colombian Spot, LLC is a Pennsylvania limited liability company with a checking account with Dollar Bank during the class period. Plaintiff is located in Pittsburgh, Pennsylvania. Plaintiff's managing member is a citizen of Pittsburgh, Pennsylvania.

10.     Plaintiff Kitty Johnson is a citizen of Pennsylvania with a checking account with Dollar Bank during the class period.

11.     Dollar Bank is a Federal Savings Bank and holds more than $10 billion in assets. Dollar Bank is headquartered in Pittsburgh, Pennsylvania and has branches in Ohio, Pennsylvania, and Virginia.

## FACTUAL ALLEGATIONS

## I.     DOLLAR BANK CHARGES MULTIPLE FEES ON THE SAME ITEM

13.     As alleged more fully herein, an improper fee assessment practice that Dollar Bank has engaged in for years is the charging of Multiple Fees on the same item.

14.     Dollar Bank's "Account Documents," consisting of the Deposit Agreement and Account Information Schedule, attached to this Complaint as *Exhibits A and B* respectively, allow it to take certain steps when an accountholder attempts a transaction but does not have sufficient funds to cover it. Specifically, Dollar Bank may: (a) authorize the transaction and charge a single OD Fee; or (b) reject the transaction and charge a single NSF Fee.

15.     In contrast to its Account Documents, however, Dollar Bank regularly assesses Multiple Fees on the same item.

16.     This abusive practice is not universal in the financial services industry.  Indeed, a major bank, Chase—the largest consumer bank in the country—does not undertake the practice of charging more than one fee on the same item when it is reprocessed.  Instead, Chase charges one fee, even if a transaction is reprocessed for payment multiple times.

17.     Dollar Bank never contracted for this practice. To the contrary, Dollar Bank indicated it will only charge a single fee on an item or per transaction.

18.     The Account Documents provide the general terms of the contract between Dollar Bank and the class members' relationship with Dollar Bank and make explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

19.     The Deposit Agreement explicitly indicates that OD Fees and NSF Fees will only be assessed once per item, when in fact Dollar Bank regularly charges Multiple Fees per item even though a customer only requested the payment or transfer once:

> Insufficient Funds and Overdrafts.  The Bank has no obligation to pay any item that is presented for payment against insufficient available funds. The Bank may determine whether or not your account contains sufficient available funds to pay an item at any time between the time the item is presented and the Bank's return deadline, and only one determination of the account balance is required. If that determination reveals insufficient available funds to pay the item, the Bank is not required to pay the item and may return it unpaid. Alternatively, the Bank may pay the item and create an overdraft in your account. . . .

> An insufficient balance or overdraft in your account and each item presented for payment against insufficient available funds in your account (whether paid, denied, or returned) are each subject to an Overdraft Penalty as provided in the Bank's then-current Account Information Schedule.

Deposit Agreement, Ex. A at ¶8.

20.     Dollar Bank's Account Agreement indicates that a singular fee can be assessed on checks, ACH debits, and electronic payments, and clearly states that only a singular charge or fee can be assessed, either an NSF Fee or OD Fee, per item or transaction that is returned due to insufficient funds.

21.      The same check, ACH debit, debit card transaction or ATM withdrawal on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit them.

22.     The Account Information Schedule reinforces this understanding:

> Overdraft or NSF Fee
>
> Assessed when the available balance in your account is insufficient to cover an item (check, fee, returned check, ATM/POS authorization, Online Banking, other electronic debit, etc.) presented for payment. An Overdraft Fee is assessed when such items are paid. An NSF Fee is assessed when the item is returned unpaid. Items may not be processed in the order they occur, which can affect overdraft fees. See the section on withdrawals in the Deposit Agreement for details. Fee limited to five (5) charges per day.

Account Information Schedule, Ex. B.

23.     Based on the above, an accountholder would expect to be charged either an NSF Fee or an OD Fee, but certainly not both, and absolutely not Multiple Fees. In fact, it is bey definition impossible to charge more than one overdraft fee on an item since that means the item has been cleared and paid, and by presenting the NSF fees with the overdraft fees, Dollar Bank contextually further reinforces that only one fee per item will be charged.

24.     There is zero indication anywhere that the same item is eligible to incur Multiple Fees.

25.     Even if Dollar Bank reprocesses an instruction for payment, it is still the same item. Dollar Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

26.     The provisions referenced above never discuss a circumstance where Dollar Bank may assess Multiple Fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

27.     In sum, Dollar Bank promises that one fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment.  As such, Dollar Bank breached the contract when it charged more than one fee per item.

28.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same

item, which Dollar Bank will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account.  Nowhere does Dollar Bank promise that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Dollar Bank customers ever agree to such fees.

29.     Customers reasonably understand, based on the language of the Account Agreement, that Dollar Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees.  In other words, it is always the same item.

30.     Banks and credit unions like Dollar Bank that employ this abusive practice know how to plainly and clearly disclose it.  Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Dollar Bank never did.

31.     For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Dollar Bank, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

(Emphasis added).

32.     First Hawaiian Bank engages in the same abusive practices as Dollar Bank, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

(Emphasis added).

33.     Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under

the "MULTIPLE NSF FEES" subsection:

> "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**."

https://tinyurl.com/373wmkyd  (emphasis added) (last visited Nov. 28, 2021).

34.    Air Academy Federal Credit Union contracts for its NSF fee as:    "$32.00   **per presentment**." https://www.aafcu.com/fees.html (emphasis added) (last visited Nov. 28, 2021).

35.    Community Bank, N.A. unambiguously contracts on this issue:

> **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned**.

https://tinyurl.com/4juy277p (emphasis added) (last visited Nov. 28, 2021).

36.    Delta Community Credit Union contracts unambiguously as follows: "$35 **per presentment**."   https://www.deltacommunitycu.com/home/fees.aspx   (emphasis   added)   (last visited Nov. 28, 2021).

37.    Further, in its Account Contract, Delta unambiguously states as follows:

> The Bank reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account.  **Note that you may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

https://tinyurl.com/etur74we (emphasis added) (last visited Nov. 28, 2021).

38.    USE Credit Union contracts as follows:

> "Overdraft/Non-sufficient Funds (NSF): Applies to checks, Bill Pay, ACH, ATM/POS and other electronic debits that are paid or returned. **Fees are charged per presentment, meaning the same item is subject to multiple fees if presented for payment multiple times**."

https://tinyurl.com/2uf5habu (emphasis added) (last visited Nov. 28, 2021).

39.     First Financial Bank contracts unambiguously:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). **Each presentment is considered an item and will be charged accordingly**."

https://tinyurl.com/48m4x8n5 (emphasis added) (last visited Nov. 28, 2021).

40.     First Northern Credit Union unambiguously contracts its NSF in its Fee Schedule as follows: "$29.00 **per each presentment and any subsequent representment(s)**." https://tinyurl.com/6rxm94ft (emphasis added) (last visited Nov. 28, 2021).

41.     Further, First Northern in its Account Contract, unambiguously contracted its NSF Fee as of 2020 as follows:

> You further agree that **we may charge a NSF fee each time an item is presented for payment even if the same item is presented for payment multiple times**. For example, if you wrote a check to a merchant who submitted the payment to us and we returned the item (resulting in a NSF fee), the merchant may re-present the check for payment again. If the second and any subsequent presentments are returned unpaid, **we may charge a NSF fee for each time we return the item. You understand this means you could be charged multiple NSF fees for one check** that you wrote as that check could be presented and returned more than once. **Similarly**, if you authorize a merchant (or other individual or entity) to electronically debit your account, such as an ACH debit, **you understand there could be multiple submissions of the electronic debit request which could result in multiple NSF fees.**

https://tinyurl.com/e6dj2m57 (emphasis added) (last visited Nov. 28, 2021).

42.     Glendale Federal Credit Union unambiguously contracts its NSF fee as, "$30 **per presentment**." https://tinyurl.com/466w96wm (emphasis added) (last visited Nov. 28, 2021).

43.     Liberty Financial contracts its NSF fee unambiguously as: "$27.00 **per presentment**." https://liberty.financial/about/fee-schedule/ (emphasis added) (last visited Nov. 28, 2021).

44.      Meriwest Credit Union unambiguously contracts its fee as: "$35.00/item **per presentment**". https://tinyurl.com/hs44c2hw (emphasis added) (last visited Nov. 28, 2021).

45.      Partners 1st Federal Credit Union contracts unambiguously:

Consequently, because **we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item**.

https://tinyurl.com/77ekhebu (emphasis added) (last visited Nov. 28, 2021)

46.      RBC Bank unambiguously contracts:

"We may also charge against the Account an NSF fee for each item returned or rejected, **including for multiple returns or rejections of the same item**."

https://tinyurl.com/y3k56uvm (emphasis added) (last visited Nov. 28, 2021).

47.      Regions Bank contracts unambiguously:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item**.

https://tinyurl.com/82s96x6v (emphasis added) (last visited Nov. 28, 2021).

48.      Tyndall Credit Union Bank contracts its NSF fee as: "$20.00 **per presentment** (maximum 5 per day)." https://tinyurl.com/sd8kssk3 (emphasis added) (last visited Nov. 28, 2021).

49.      Dollar Bank provided no such disclosure at the time of the operative transactions, and in so doing, deceived its accountholders about its true practices.

## II.   DOLLAR BANK CHARGES OD FEES AND NSF FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

50.     As alleged above, Plaintiffs each have a checking account with Dollar Bank.

51.     Dollar Bank issues debit cards to its checking account customers, including Plaintiffs, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals, and other electronic debit transactions.

52.     Pursuant to its standard account agreement, Dollar Bank charges OD Fees and NSF Fees (currently in the amount of $36) for transactions that purportedly result in an overdraft, an OD Fee charged when the overdraft is paid, and an NSF Fee charged when the transaction is returned for insufficient funds.

53.     Upon information and belief, Dollar Bank has programmed its software to employ three different practices when assessing fees on accounts that were never actually overdrawn.

### A.   Sufficient Funds

54.     First, the plain language of Dollar Bank's adhesion contracts specifically promises that Dollar Bank will only charge OD Fees or NSF Fees on items when such items cause the account to have a negative balance.

55.     Attached as *Exhibit C* is Dollar Bank's contract entitled "What You Need to Know About Overdrafts."  It states as follows:

Overdraft Notification

## What You Need to Know about Overdrafts and Overdraft Fees

An <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway.

56.     As can be seen, it states that "an overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway."  However, in practice, Dollar

Bank, on information and belief, has programmed its software to ignore the actual money in the account, and instead use a lesser amount where it deducts from the money in the account the holds it has placed on pending debit card transactions and the holds it has placed on deposits.  This is in contradiction of its contractual term of when an overdraft occurs.  It does not state "an overdraft occurs when you do not have enough money in your account after we deduct from the money in your account the holds we have placed on pending debit card transactions and deposits."

57.     Checking accounts with Dollar Bank were, at all relevant times, also governed by Dollar Bank's standardized Deposit Agreement and Account Information Schedule, the material terms of which are drafted by Dollar Bank, amended by Dollar Bank from time to time at its convenience and complete discretion, and imposed by Dollar Bank on all accountholders.

58.     The Account Documents contain a promise that Dollar Bank will not charge OD Fees for an item when there is sufficient money in the account to pay for the item.

59.     The Deposit Agreement expressly promises when OD Fees and NSF Fees may be assessed:

> **Insufficient Funds and Overdrafts**.  The Bank has no obligation to pay any item that is presented for payment against insufficient available funds. The Bank may determine whether or not your account contains sufficient available funds to pay an item at any time between the time the item is presented and the Bank's return deadline, and only one determination of the account balance is required. If that determination reveals insufficient available funds to pay the item, the Bank is not required to pay the item and may return it unpaid. Alternatively, the Bank may pay the item and create an overdraft in your account. Whether or not the Bank decides to pay the item and create an overdraft is in the sole discretion of the Bank and will depend on various factors, including your history with the Bank. Moreover, the honoring of one or more items drawn against insufficient available funds does not obligate the Bank to honor any other such items, either in the future or during the same day's processing, and you should not rely on the Bank to honor any particular items drawn against insufficient available funds. In all cases, the Bank is not required to give you prior notice that an item will be returned for insufficient available funds.
>
> An insufficient balance or overdraft in your account and each item presented for

payment against insufficient available funds in your account (whether paid, denied, or returned) are each subject to an Overdraft Penalty as provided in the Bank's then-current Account Information Schedule.

Deposit Agreement, Ex. A at ¶8.

60.     The Account Information Schedule incorporated in the Deposit Agreement and therefore part of that contract, provides when OD Fees and NSF Fees are assessed:

> Overdraft or NSF Fee
> Assessed when the available balance in your account is insufficient to cover an item (check, fee, returned check, ATM/POS authorization, Online Banking, other electronic debit, etc.) presented for payment. An Overdraft Fee is assessed when such items are paid. An NSF Fee is assessed when the item is returned unpaid. Items may not be processed in the order they occur, which can affect overdraft fees. See the section on withdrawals in the Deposit Agreement for details. Fee limited to five (5) charges per day.

Account Information Schedule, Ex. B.

61.     At best for Dollar Bank, because it never promises that holds being placed on debit card transactions somehow reduce the amount of money that is considered for assessing an overdraft fee, but the contract does address holds on certain deposits, the contract arguably might be ambiguous whether the holds on the deposits should be deducted from the money in the account for purposes of assessing an OD Fee or NSF Fee.  However, under no circumstances can holds placed on pending debit card transactions also be used for purposes of reducing the amount of money in the account as that money is in the account, and nowhere is it contracted that it would not be considered when assessing OD Fees or NSF Fees. However, on information and belief, according to the monthly account statements prepared by Dollar Bank, OD Fees and NSF Fees are charged when the account balance was not negative.  Thus, the items did not actually overdraw Plaintiff's account and Dollar Bank charged hefty OD Fees and NSF Fees anyway.

### B.  APPSN Transactions

62.     Second, in addition to breaching that portion of its contract which states "an

overdraft occurs when you do not have enough money in your account" and instead deducting holds it has placed from that money, on information and belief, Dollar Bank breaches its contracts also by charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

63.     Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Dollar Bank immediately reduces accountholders' checking accounts for the amount of the purchase and sets aside those funds in a checking account to cover that transaction. It does not allow that money it has set aside to be used for any other transactions.  As a result, customers' accounts will always have sufficient available funds to cover these transactions because Dollar Bank has already sequestered these funds for payment.

64.     However, Dollar Bank still assesses crippling OD Fees currently in the amount of $36 on many of these transactions and mispresents its practices in its Account Documents.

65.     Despite putting aside funds for debit card transactions at the time those transactions are authorized, Dollar Bank later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance.  These types of transactions are APPSN Transactions.

66.     Dollar Bank maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, on information and belief, Dollar Bank's software is programmed to sequester the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the

accountholder, and such funds are specifically associated with a given debit card transaction.

67.     That means when any *subsequent*, intervening transactions are initiated on a checking account, as a result of the way that Dollar Bank has programmed its software, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

68.     Still, despite keeping those held funds off-limits for other transactions, on information and belief, Dollar Bank improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

69.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers

were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

70.     Besides being unfair and unjust, these practices breach contract promises made in Dollar Bank's adhesion contracts—contracts which fail to inform accountholders about the true nature of Dollar Bank's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

71.     In short, Dollar Bank is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

72.     A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Dollar Bank. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to Dollar Bank, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

73.     At this step, if the transaction is authorized, Dollar Bank immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

74.     Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

75.     Dollar Bank decides whether to "pay" debit card transactions at authorization. After that, Dollar Bank is obligated to pay the transaction no matter what.  For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the

transaction is authorized or declined.  It is at that point—and only that point—when Dollar Bank may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

76.     There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

77.     For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same point of sale ("POS") debit card transaction, there are always funds to cover those transactions at the time of authorization—yet Dollar Bank assesses OD Fees on them anyway.

78.     In its "What You Need to Know About Overdrafts," Dollar Bank also states as follows:

### What are the standard overdraft practices that come with my account?

We do authorize and pay overdrafts for the following types of transactions:
- • Checks and other transactions made using your checking account number
- • Automatic bill payments, including those made using your debit or ATM card

We do not authorize and pay overdrafts for the following types of transactions unless you ask us to (see below).
- • Everyday debit card transactions (one-time purchase or payment transactions made using your Dollar Bank Debit or ATM Card)

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction.

If we do not authorize and pay an overdraft, your transaction will be declined.

*See* Ex. C.

78.     Dollar Bank's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Dollar Bank's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

79.     Sufficient funds for APPSN Transactions are actually debited from the account immediately. Because Dollar Bank has programmed its software to cause these withdrawals take place upon initiation, they cannot be re-debited later. But that is what Dollar Bank does when it re-debits the account during a secret batching posting process.

80.     In reality, Dollar Bank's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

81.     At the time of settlement, however, even if a lesser balance permitting holds on deposits to be deducted from the balance had been contracted for, an available balance by definition does *not change at all* for these transactions previously authorized into good funds. As such, Dollar Bank cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

82.     This discrepancy between Dollar Bank's actual practices and the contract causes accountholders to incur more OD Fees than they should.

83.     In sum, there is a huge gap between Dollar Bank's practices as described in the account documents and Dollar Bank's practices in reality.

### C.  False NSF Balance Deduction

84.     Third, Dollar Bank charges NSF Fees and OD Fees on items under the false premise that there were insufficient funds to pay the item because of a previously returned item(s).

85.     When Dollar Bank declines to pay an item on a given day and charges an NSF Fee for it, it nonetheless inexplicably deducts the dollar amount of the returned item(s) from the accountholder's balance, pretending that the money was paid to the merchant when it was not. On information and belief, that artificially lowered dollar amount is what Dollar Bank has programmed its software to use when Dollar Bank then makes pay or return decisions on items that are subsequently processed on the *same* day and deemed insufficient funds transactions and charged NSF Fees or OD Fees.

86.     On the next posting day, Dollar Bank then credits the account in the dollar amount of each returned item(s) from the previous posting day, restoring the account balance back to what it was all along.

87.     Were it not for the false deduction of money from the balance which has never actually left the account, Dollar Bank would have no basis to deem certain subsequently processed items as ones which would overdraw the account and, therefore, no basis to charge an NSF Fee for returning the item or an OD Fee for paying that item. Instead, the item should be posted as a sufficient funds item and not charged a fee.

88.     These NSF Fees and OD Fees that were charged based on the false balance deduction that breach the Account Documents.

## III.     DOLLAR BANK ABUSES CONTRACTUAL DISCRETION

89.     Dollar Bank's treatment of debit transactions to charge OD Fees and NSF Fees is not simply a breach of the express terms of the numerous account documents. In addition, Dollar Bank exploits contractual discretion to the detriment of accountholders when it uses these policies.

90.     As alleged above, Dollar Bank reserves discretion to pay an item into overdraft or return it and promises to charge OD Fees and NSF Fees when there are insufficient funds.  Dollar

Bank in a surprising, counterintuitive way uses its discretion to deem debit transactions to overdraw the account despite there being sufficient funds to cover them. It has programmed its software when determining whether an overdraft occurs to not count all of the money in the account despite contracting that "an overdraft occurs when you do not have enough money in your account," and instead it has its software deduct not only holds placed on deposits, but also holds on pending debit card transactions to be deducted from the money in the account. It would have been a simple matter for Dollar Bank to program its software otherwise, so as not to engage in this fee maximizing behavior at the expense of its accountholders.

91.    Moreover, Dollar Bank uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions. It has programmed its software when determining whether an overdraft occurs to do this, and there is no reason for it to do this other than to increase its own fee revenue. It would have been a simple matter for Dollar Bank to program its software otherwise, so as not to engage in this fee maximizing behavior at the expense of its accountholders.

92.    Additionally, Dollar Bank uses its contractual discretion to use temporary and false account balance deductions to deem subsequently processed items as insufficient funds items, even though those amounts it is deducting from its customers' balances were never used to pay the other transaction in question. It has programmed its software to do this, and there is no reason for it to do this other than to increase its own fee revenue. It would have been a simple matter for Dollar Bank to program its software otherwise, so as not to engage in this fee maximizing behavior at the expense of its accountholders.

93.    Finally, Dollar Bank uses its contractual discretion to cause Multiple Fees to be

charged on a single item. It has programmed its software to do this, and there is no reason for it to do this other than to increase its own fee revenue. It would have been a simple matter for Dollar Bank to program its software otherwise, so as not to engage in this fee maximizing behavior at the expense of its accountholders.

94.     Dollar Bank uses these contractual discretion points unfairly to extract OD Fees and NSF Fees on transactions that no reasonable accountholder would believe could cause such fees.

## IV.     <u>REGULATION E</u>

95.     The federal government also has stepped in to provide additional protections to customers with respect to abusive overdraft policies. In 2010, the Federal Reserve Board enacted regulations giving financial institutions the authority to charge overdraft fees on ATM and onetime debit card transactions only if the institution first obtained the affirmative consent of the customer to do so. (12 C.F.R. § 1005.17 (Regulation E's "Opt-In Rule")). Dollar Bank was required by Regulation E to provide an Opt-In Contract to Plaintiffs and the class members which governs the terms under which Dollar Bank may assess Plaintiff and the class members overdraft fees for ATM and non-recurring debit card transactions, and must obtain their affirmative agreement to the contract before being allowed to charge overdraft fees for these debit card and ATM transactions.

96.     The importance of Regulation E is highlighted by the fact that the Consumer Financial Protection Bureau's study of actual practices found that: (1) ATM and debit card transactions are by far the most frequent transactions that occur; (2) overdraft fee policies entail expensive fees at very little risk to the financial institutions; and (3) opted-in accounts have seven times as many overdrafts that result in fees as not opted-in accounts.

97.     Dollar Bank's Opt-In Contract, on information and belief, is the separate "What

You Need to Know About Overdrafts" (hereafter referred to as the "Opt-In Contract"). *See* Ex. C. It defines an "overdraft" as follows: "An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." However, in contradiction of this language, Dollar Bank, as alleged, would nonetheless assess overdraft fees even when there was enough money to cover the transaction despite even having sequestered the money to maintain it specifically for the transaction at issue. Because, *inter alia*, the Opt-In Contract does not describe Dollar Bank's actual overdraft practice, the Opt-In Contract fails to comply with the requirements of Regulation E.

## V.    PLAINTIFFS' EXPERIENCES

98.    As an example of these fee maximizing practices, on June 8, 2018, Plaintiff The Colombian Spot, LLC was assessed an OD Fee for a debit card transaction that did not overdraft the account.  Upon information and belief, Plaintiff The Colombian Spot, LLC was unlawfully charged other OD Fees and NSF Fees. Discovery will be necessary to obtain all of Plaintiff's monthly account statements. The monthly statements are extremely difficult to understand, and next to impossible for a layperson to decipher about how Dollar Bank has programmed its software to assess fees.  Further, to date, Dollar Bank has refused to provide even the monthly statements as requested. Discovery also may be necessary of Dollar Bank's software to prove that Dollar Bank has programmed its software in a manner to cause the fees as alleged in this Complaint, in contradiction and breach of its contracts.

99.    As other examples, on January 14, 2021, and February 9, 2021, Plaintiff Kitty Johnson was assessed OD Fees on transactions that did not overdraw her account. Upon information and belief, she was unlawfully charged other fees. Discovery will be necessary to obtain all of Plaintiff's monthly account statements. The monthly statements are extremely

difficult to understand, and next to impossible for a layperson to decipher about how Dollar Bank has programmed its software to assess fees.  Further, discovery also may be necessary of Dollar Bank's software to prove that Dollar Bank has programmed its software in a manner to cause the fees as alleged in this Complaint, in contradiction and breach of its contracts.

100.    As yet another example, Plaintiff Kitty Johnson was charged an NSF Fee on an item on February 9, 2021, which on information and belief but for the false and temporary balance deduction for a previously returned item should not have been deemed negative and assessed an NSF Fee. Discovery will be necessary to obtain all of Plaintiff's monthly account statements. The monthly statements are extremely difficult to understand, and next to impossible for a layperson to decipher about to how Dollar Bank has programmed its software to assess fees.  Further, discovery also may be necessary of Dollar Bank's software to prove that Dollar Bank has programmed its software in a manner to cause the fees as alleged in this complaint, in contradiction and breach of its contracts.

101.    As a final example of these improper fee maximizing practices, on January 13, 2021, Plaintiff Kitty Johnson attempted to make a payment to Comenity Pay, via ACH debit. Dollar Bank rejected payment of that item due to insufficient funds and charged her a $36.00 NSF Fee. Unbeknownst to Plaintiff Kitty Johnson and without her request to Dollar Bank to retry the transaction, six days later, on January 14, 2019, Dollar Bank processed the same item again, and again rejected the item and again charged Plaintiff a $36.00 NSF Fee.   In sum, Dollar Bank charged Plaintiff $72.00 in fees to process a single payment. Plaintiff understood the above transactions to each be a single transaction, an understanding consistent with what is laid out in Dollar Bank's Account Documents, capable at most of receiving a single NSF Fee (if Dollar Bank returned it) or single OD Fee (if Dollar Bank paid it).

**VI.**     **CLASS ACTION ALLEGATIONS**

102.    Plaintiffs brings this action on individually and on behalf of all others similarly

situated pursuant to F.R.C.P. 23. The Classes are defined as:

> All Dollar Bank accountholders who, during the applicable statute of limitations, were charged were charged two or more fees ("Multiple Fees") on the same item (the "Multiple Fee Class").

> All Dollar Bank accountholders who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged OD Fees or NSF Fees on items that did not overdraw their checking account (the "Sufficient Funds Class").

> All Dollar Bank accountholders who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged OD Fees on APPSN Transactions (the "APPSN Class").

> All Dollar Bank accountholders who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged NSF Fees or OD Fees due to false and temporary balance deductions (the "False NSF Balance Deduction Class").

> All Dollar Bank accountholders who within the applicable statute of limitations incurred an overdraft fee or overdraft fees for ATM or non-recurring debit card transaction(s) ("Regulation E Class").

> All Dollar Bank Pennsylvania citizen accountholders who, during the applicable statute of limitations, were charged were charged two or more fees ("Multiple Fees"), including NSF Fees and OD Fees on the same item (the "Pennsylvania Multiple Fee Class").

> All Dollar Bank Pennsylvania citizen accountholders who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged OD Fees or NSF Fees on items that did not overdraw their checking account (the "Pennsylvania Sufficient Funds Class").

> All Dollar Bank Pennsylvania citizen accountholders who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged OD Fees on APPSN Transactions (the "Pennsylvania APPSN Class").

> All Dollar Bank Pennsylvania citizen accountholders who, within the applicable statute of limitations preceding the filing of this lawsuit, were charged NSF Fees or OD Fees due to false and temporary balance deductions (the "Pennsylvania False NSF Balance Deduction Class").

103.    Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates,

their officers, directors and member of their immediate families and any entity in which Defendant

has a controlling interest, the legal representatives, heirs, successors or assigns of any such

excluded party, the judicial officer(s) to whom this action is assigned, and the members of their

immediate families.

104.    Plaintiff reserves the right to modify or amend the definition of the proposed

Classes and/or to add a subclass(es), if necessary, before this Court determines whether

certification is appropriate.

105.    The questions here are ones of common or general interest such that there is a well-

defined community of interest among the members of the Classes. These questions predominate

over questions that may affect only individual class members because Dollar Bank has acted on

grounds generally applicable to the Classes.  Such common legal or factual questions include, but

are not limited to:

a)  Whether Dollar Bank improperly charged OD Fees and NSF Fees on items that did
    not overdraw checking accounts;

b)  Whether Dollar Bank improperly charged OD Fees on APPSN Transactions;

c)  Whether Dollar Bank improperly charged Multiple Fees on a single ACH debit or
    check;

d)  Whether the conduct enumerated above violates the contract;

e)  Whether the conduct enumerated above violates the covenant of good faith and fair
    dealing;

f)  Whether the conduct enumerated above violates the Pennsylvania Unfair Trade
    Practices and Consumer Protection Law;

g)  Whether the conduct enumerated above violates Regulation E; and

h)  The appropriate measure of damages and other relief.

106.    The parties are numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Dollar Bank's records.  Dollar Bank has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

107.    It is impracticable to bring individual claims for members of the Classes before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

108.    Plaintiffs' claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Dollar Bank, as described herein.

109.    Plaintiffs are more than an adequate representatives of the Classes in that Plaintiffs have Dollar Bank checking account and have suffered damages as a result of Dollar Bank's contract violations.  In addition:

a)  Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf

of accountholders against financial institutions;

b) There is no conflict of interest between Plaintiffs and the unnamed members of the Classes;

c) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d) Plaintiffs' legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

110.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

111.    Dollar Bank has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

112.    All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Individually and on Behalf of the Classes)

113.    Plaintiffs repeat and incorporate the allegations in paragraphs 1-112 above as if fully set forth herein.

114.    Plaintiffs, and all members of the proposed Classes, contracted with Dollar Bank for checking account services, including debit card services.

115.    Dollar Bank breached promises made to Plaintiffs and all members of the proposed Classes when as described herein, Dollar Bank charged:

a.      Multiple Fees on a single ACH debit or check;

b.      OD Fees and NSF Fees on items that did not overdraw their checking account;

c.      OD Fees on APPSN Transactions; and

    d.     NSF Fees and OD Fees due to false deductions from the account balance for items returned for insufficient funds.

116.    In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring he right of the other party to receive the fruits of the contract.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

117.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

118.    The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

119.    Dollar Bank has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein.  Specifically, Dollar Bank should not have used its discretion to charge (a) Multiple Fees on a single ACH debit or check OD Fees on APPSN Transactions; (b) OD Fees and NSF Fees on items that did not overdraw their checking account; (c) OD Fees on APPSN Transactions; and (d) NSF Fees and OD Fees caused by false deductions

from the account balance for items returned for insufficient funds. The Account Documents do not permit OD Fees or NSF Fees on such transactions, and the contract is otherwise ambiguous as to any right for Dollar Bank to charge such fees.

120.    Plaintiffs and all members of the proposed Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

121.    Plaintiffs and all members of the proposed Classes have sustained damages as a result of Dollar Bank's breach of the contract and breach of the duty of good faith and fair dealing.

### COUNT II - (VIOLATION OF ELECTRONIC FUND TRANSFERS ACT (REGULATION E) C.F.R. § 1005 et seq.  (authority derived from 15 U.S.C. § 1693 et seq.)) (Individually and on Behalf of the Regulation E Class)

122.    Plaintiff Kitty Johnson repeats and incorporates the allegations in paragraphs 1-112 above as if fully set forth herein.

123.    By charging overdraft fees on ATM and nonrecurring transactions, Dollar Bank violated Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.1(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act (15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005.1(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

124.    Specifically, the charges violated what is known as the "Opt In Rule" of Reg E.  (12 C.F.R. §1005.17.)  The Opt In Rule states: "a financial institution ... shall not assess a fee or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing [the opt-in notice] . . . describing the institution's overdraft service" and (ii) "[p]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft program (*Id.*)  The notice "shall be clear and readily understandable."  (12 C.F.R. §205.4(a)(1).)  To comply with the affirmative consent requirement, a financial institution must

provide a segregated description of its overdraft practices that is accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in, and must provide its customers a reasonable opportunity to opt-in after receiving the description. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R. § 1005.17.

125.    The intent and purpose of this Opt-In Contract is to "assist customers in understanding how overdraft services provided by their institutions operate .... by explaining the institution's overdraft service ... in a clear and readily understandable way"—as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which is "the CFPB's official interpretation of its own regulation," "warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Reg E. *Strubel v. Capital One Bank (USA)*, 2016 U.S. Dist. LEXIS 41487, *11 (S.D.N.Y. 2016) (quoting *Chase Bank USA v. McCoy*, 562 U.S. 195, 211 (2011)) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Reg Z)).

126.    Dollar Bank failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees against customers' accounts through an overdraft program for ATM and non-recurring debit card transactions.  Dollar Bank has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17.  Dollar Bank's opt-in method fails to satisfy 12 C.F.R. §1005.17 because, *inter alia*, it states that an overdraft occurs when there is not enough money in the account to cover a transaction, when in fact Dollar Bank assesses overdraft fees when there is

enough money in the account to pay for the transaction at issue; and for other reasons as alleged.

127.    As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so Dollar Bank has harmed Plaintiff Kitty Johnson and the class members.

128.    Due to Dollar Bank's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff Kitty Johnson and members of the Regulation E Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

### COUNT III - PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (Individually and on Behalf of the Pennsylvania Classes)

129.    Plaintiffs repeat and incorporate the allegations in paragraphs 1-112 above as if fully set forth herein.

130.    This claim is asserted on behalf of the Subclass of Dollar Bank customers who are Pennsylvania citizens and enjoy the protections of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*.

131.    Dollar Bank engages in unfair business practices relating to the imposition of OD Fees and NSF Fees on consumers, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. In particular, the wrongful conduct described herein violated 73 P.S. § 201-2(4)(v) (representing that goods or services have characteristics, uses, or benefits that they do not have), § 201-2(4)(xiv) (failing to comply with the terms of any written guarantee or warranty given to a buyer), and § 201-2(4)(xxi) (engaging in any other deceptive conduct which creates a likelihood of confusion or misunderstanding).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demand a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action on behalf of the Classes;

B. Declaring Dollar Bank's OD Fee and NSF Fee policies and practices to be in breach of its contract with accountholders and in breach of the implied covenant of good faith and fair dealing;

C. Restitution of all OD Fees and NSF Fees paid to Dollar Bank by Plaintiffs and the members of the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

D. Actual damages in an amount according to proof;

E. Statutory and/or treble damages for the Pennsylvania Classes;

F. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

G. For costs and attorneys' fees under the common fund doctrine, and all other applicable laws; and

H. Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and the Classes, hereby demand a trial by jury on all claims so triable.

Dated: November 29, 2021

Respectfully submitted,

*/s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld (pro hac vice)
Jeff Ostrow*
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
streisfeld@kolawyers.com

R. Aaron Rihn
**ROBERT PEIRCE & ASSOCIATES, P.C.**
707 Grant Street
Suite 125
Pittsburgh, PA 15219

Taras P. Kick, Esq.*
Jeffry Bils*
**THE KICK LAW FIRM APC**
815 Moraga Drive
Los Angeles, CA 90049
taras@kicklawfirm.com

*Counsel for Plaintiffs and the Classes*
*\*Pro Hac Vice To Be Filed*